UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
_____
                              )
ANTHONY LIPSCOMB,             )
                              )
        Plaintiff,            )
                              )
    v.                        )    C.A. No. 22-319 WES
                              )
STATE OF RHODE ISLAND; RHODE ISLAND)
STATE POLICE DEPARTMENT; RI STATE  )
TROOPER PARDINGTON (#269); RI STATE)
TROOPER MICHAEL WINTON; RHODE      )
ISLAND STATE TROOPER COLASANTE;    )
BARRINGTON POLICE DEPARTMENT;      )
BARRINGTON POLICE DEPARTMENT       )
PATROLMAN DACOSTA; TIVERTON POLICE )
DEPARTMENT; TIVERTON POLICE        )
DEPARTMENT PATROLMAN JORDAN        )
DASILVA; SOUTH KINGSTOWN POLICE    )
DEPARTMENT; SOUTH KINGSTOWN POLICE )
PATROLMAN JEFFREY SHAGRILL,        )
                              )
        Defendants.           )
_____)
```

## MEMORANDUM AND ORDER

WILLIAM E. SMITH, Senior District Judge.

Plaintiff Anthony Lipscomb asserts civil rights claims against various police departments and their officers based on a series of purportedly improper traffic stops. Several of those Defendants move to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). Barrington Defs.' Mot. Dismiss, ECF No. 12; Tiverton Defs.' Mot. Dismiss, ECF No. 13; South Kingstown Defs.' Mot. Dismiss, ECF No. 20. Lipscomb now seeks leave to amend his Complaint, which Defendants oppose. Mot. Amend, ECF No. 36;

Mun. Defs.' Obj. Pl.'s Mot. Amend Compl., ECF No. 37; State Defs.' Resp. Opp. Pl.'s Second Mot. Amend Compl. ("State Defs.' Resp."), ECF No. 38.

## I. BACKGROUND[1]

Lipscomb alleges that several law enforcement officers and their departments — the Barrington Police Department, Tiverton Police Department, South Kingstown Police Department, and Rhode Island State Police — conspired to violate his Fourth Amendment right against unreasonable searches and seizures by repeatedly initiating traffic stops based on his race.  See generally Compl., ECF No. 1.  Lipscomb seeks eighteen million dollars in compensatory and punitive damages for the emotional distress that he suffered from the traffic stops.  Id. at 9, 15, 18-19, 22-23, 25-29.

Because Lipscomb's claims arise from a string of traffic stops in various jurisdictions, the Court recites the factual allegations as they are set forth in the Complaint and as they relate to each police department and its respective officers.

### A. Barrington Defendants

Around noon on March 8, 2022, Lipscomb drove past Defendant Patrolman Nathan DaCosta — an officer for Defendant Barrington

---

[1] The Court assumes that Lipscomb's factual allegations are true for the purpose of assessing the motions to dismiss.  See Pemental v. Sedgwick Claims Mgmt. Sys., Inc., No. 14-45-M, 2014 WL 2048279, at *1 n.2 (D.R.I. May 19, 2014) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

Police Department — who was observing traffic from his police cruiser in a nearby parking lot. Id. at 8. Upon seeing Lipscomb, DaCosta abruptly exited the lot and pulled him over. Id. DaCosta approached the vehicle and informed Lipscomb that he stopped him for his license plate cover. Id. Because the vehicle was not registered, DaCosta cited him and ordered that the vehicle be towed. Id. at 8-9.

Lipscomb alleges that the stop was improper because the license plate cover was transparent. Id. at 9. Lipscomb also states that DaCosta towed the vehicle even after Lipscomb presented documentation of a cancelled DMV appointment for registering the vehicle. Id. at 8-9. Lastly, he alleges that the Barrington Police Department was complicit in DaCosta's wrongdoing by siding with DaCosta and failing to enact policy modifications to address such conduct. Id. at 26-27.

### B. Tiverton Defendants

Just over two months after the Barrington stop, Defendant Patrolman Jordan DaSilva of Defendant Tiverton Police Department ("TPD") drove past Lipscomb on a Tiverton highway around 11:00 p.m. Id. at 16. After looking at Lipscomb, DaSilva sped down the highway and stopped in the right breakdown lane. Id. DaSilva waited for Lipscomb to pass and then pulled him over. Id. Upon approaching the vehicle, DaSilva stated that he stopped Lipscomb because he slowed down when he drove past the police cruiser. Id.

at 17.  DaSilva also asked Lipscomb if he was driving from Newport, Rhode Island, because "a lot of people come from there [at this time]."  Id. at 16.

DaSilva soon discovered that Lipscomb's vehicle registration had expired.  Id. at 17.  DaSilva, as well as another officer who had arrived at the scene, called for a tow truck and informed Lipscomb that department policy prohibited them from leaving Lipscomb on the side of the highway while he waited for a ride. Id.  The officers offered to drive Lipscomb to the police station or to a nearby casino, but Lipscomb initially refused.  Id. Lipscomb then complied with those demands once the officers intimated that they would use force to get him into the vehicle. Id. at 17-18.  The officers ultimately dropped Lipscomb off at the casino.  Id.

Lipscomb later filed a complaint against DaSilva and requested the police report from the TPD.  Id. at 18.  Lipscomb claimed that DaSilva pulled him over due to his race, as evidenced by DaSilva's decision to stop Lipscomb after seeing his face and by the question concerning Lipscomb's previous whereabouts.  Id. at 18, 27.  Lipscomb also alleged that DaSilva broke protocol by driving significantly above the speed limit.  Id.  The TPD investigated the complaint and ruled for DaSilva.  Id.

**C. South Kingstown Defendants**

Around June 2022, Defendant Patrolman Jeffrey Sugrue[2] of the Defendant South Kingstown Police Department observed Lipscomb as he drove past Sugrue's parked cruiser. Id. at 20. Upon seeing Lipscomb, Sugrue closely followed him. Id. Lipscomb, who was concerned for his own safety, pulled over to the side of the road to let Sugrue pass. Id. Sugrue then drove past Lipscomb and disappeared down the road. Id. at 20-21.

Minutes later, Sugrue pulled over Lipscomb and stated that he initiated the stop because Lipscomb was driving with a suspended license. Id. at 21. When Lipscomb asked Sugrue why he left his parked position to follow him, Sugrue answered that "the car could be stolen." Id. Sugrue then confiscated the license and told Lipscomb that he could not drive his vehicle from the scene. Id.

**D. State Defendants**

Lipscomb identifies two traffic stops by officers of the Defendant Rhode Island State Police ("RISP"). On February 25, 2020, Defendant Trooper Pardington pulled Lipscomb over while he was driving a loaned vehicle in Providence, Rhode Island. Id. at 10. Lipscomb provided Pardington with the vehicle's documentation, and twenty minutes later, a tow truck arrived. Id.

---

[2] Lipscomb erroneously identified Jeffrey Sugrue as "Jeffrey Shagrill" in the Complaint. See Mun. Defs.' Mem. L. Resp. Pl.'s Obj. Mot. Dismiss 1 n.1, ECF No. 31.

at 10-11.  Although Lipscomb's allegations are unclear, it appears that Pardington cited Lipscomb because he placed his own license plate, which was not registered, on the loaned vehicle.  Id. at 11.  Pardington then issued a ticket and towed the vehicle, rendering Lipscomb unable to attend work.  Id.  A prosecutor later dismissed the ticket.  Id. at 12.

Approximately two weeks later, Defendant Officers Michael Winton and Michael Colasante stopped Lipscomb in Pawtucket, Rhode Island, for having tinted windows.  Id. at 13.  The officers ordered Lipscomb to exit the vehicle, and he reluctantly complied.  Id.  They then searched Lipscomb and questioned him about his whereabouts and employment.  Id. at 13-14.  After thirty-four minutes of questioning, the officers released him with a citation.  Id. at 14.

## II. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the plausibility of a complaint's allegations.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  The plausibility standard does not require a party to demonstrate that its claims will likely prevail.  Gminski v. Liberty Mut. Fire Ins. Co., No. 24-131, 2024 WL 3415828, at *2 (D.R.I. July 15, 2024).  Rather, the complaint need only allege "enough factual detail to make the asserted claim 'plausible on its face.'"  Cardigan

Mountain Sch. v. N.H. Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

The Court assesses plausibility through a two-step inquiry. United States v. Cross, No. 23-00214, 2023 WL 6215819, at *1 (D.R.I. Sept. 25, 2023) (citing Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 7, 11-13 (1st Cir. 2011)). The first step "distinguishes 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" Garcia-Catalan v. United States, 734 F.3d 100, 103 (1st Cir. 2013) (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). The second step "determine[s] whether the factual allegations are sufficient to support 'the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011)). In so doing, the Court must draw "all reasonable inferences in the pleader's favor." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012).

Because Lipscomb is proceeding pro se, the Court reads his Complaint "with an extra degree of solicitude." Rodi v. Ventetuolo, 941 F.2d 22, 23 (1st Cir. 1991). Nonetheless, pro se litigants must still comply with relevant rules and procedural law. See Andrews v. Bechtel Power Corp., 780 F.2d 124, 140 (1st Cir. 1985), cert. denied, 476 U.S. 1172 (1986) (citing Faretta v.

7

*California*, 422 U.S. 806, 835 n.46 (1975)).  It is not the role of the Court "to take up the slack when a party elects to represent himself."  <u>Boudreau v. Petit</u>, No. 17-301, 2024 WL 665546, at *3 (D.R.I. Feb. 16, 2024) (quoting <u>Eagle Eye Fishing Corp. v. U.S. Dep't of Com.</u>, 20 F.3d 503, 506 (1st Cir. 1994)).

### III. DISCUSSION

#### A. Municipal Defendants' Motions to Dismiss[3]

Barrington Defendants, Tiverton Defendants, and South Kingstown Defendants (collectively, "Municipal Defendants") seek dismissal of Lipscomb's 42 U.S.C. § 1983 claims that stem from their purported violations of his Fourth Amendment rights. Barrington Defs.' Mot. Dismiss; Tiverton Defs.' Mot. Dismiss; South Kingstown Defs.' Mot. Dismiss.  They contend their law enforcement officers had sufficient cause to initiate the traffic stops and the allegations do not demonstrate that racial animus motivated the stops.  Barrington Defs.' Mem. Supp. Mot. Dismiss ("Barrington Mem.") 2-4, ECF No. 12-1; Tiverton Defs.' Mem. Supp. Mot. Dismiss ("Tiverton Mem.") 2-4, ECF No. 13-1; South Kingstown Defs.' Mem. Supp. Mot. Dismiss ("South Kingstown Mem.") 2-4, ECF No. 20-1; Mun. Defs.' Mem. Resp. Pl.'s Obj. ("Mun. Defs.' Reply") 3-6, ECF No. 31.  Further, they assert that Lipscomb does not state

---

[3] State Defendants did not move to dismiss Lipscomb's initial Complaint, having filed an answer in April 2023.  <u>See</u> Answer Defs.' Pl.'s Compl., ECF No. 15.

claims against the police departments because he does not allege unlawful patterns or practices. Barrington Mem. 3-4; Tiverton Mem. 4; South Kingstown Mem. 4; Mun. Defs.' Reply 7-9.

Traffic stops implicate the Fourth Amendment right against unreasonable seizures. Whren v. United States, 517 U.S. 806, 809-10 (1996). That is because "[a] traffic stop, by definition, embodies a detention of the vehicle and its occupants." United States v. Chhien, 266 F.3d 1, 5 (1st Cir. 2001). Under the Fourth Amendment, officers must have a "reasonable suspicion that a traffic violation has occurred" to initiate a stop. United States v. Chaney, 584 F.3d 20, 24 (1st Cir. 20009) (quoting Brendlin v. California, 551 U.S. 249, 255 (2007)). Specifically, reasonable suspicion is "an intermediate standard" between a naked hunch and probable cause that necessitates a case-by-case analysis based on a "broad-based consideration of all attendant circumstances." Chhien, 266 F.3d at 6.

The following recitation addresses the viability of the § 1983 claims that Lipscomb asserts based on Fourth Amendment violations by each party.

### 1. Barrington Defendants

#### a. Patrolman DaCosta

Lipscomb alleges that Patrolman DaCosta violated his Fourth Amendment rights when he pulled Lipscomb over for a license plate cover and then towed the vehicle due to its registration status.

Compl. 8-9.  In response, Barrington Defendants assert that DaCosta initiated the stop because he saw a license plate cover on Lipscomb's vehicle, which is prohibited under Rhode Island law. Mun. Defs.' Reply 4-5.

In support of this assertion, Barrington Defendants cite R.I. Gen. Laws § 31-3-18(b), which provides that a "registration plate" must be "in a place and position to be clearly visible and shall be maintained free from foreign materials and in a condition to be clearly legible."  Id. at 4.  According to Barrington Defendants, Lipscomb violated § 31-3-18(b) because his license plate cover was a "foreign material[]" that "obscure[ed] his registration plate." Id.  Lipscomb's Complaint, however, alleges that his license plate cover was "transparent," Compl. 8-9, which the Court takes to mean that his registration plate was "in a condition to be clearly legible" despite the covering.  The Complaint further alleges that the stop occurred just after noon and that the weather conditions at the time were clear.  Id. at 9.

Whether the use of a transparent license plate cover violates § 31-3-18(b) is an open question.  The Court notes, however, that similar laws in other states have been the subject of considerable litigation.  See, e.g., State v. Griffin, 997 N.W.2d 416 (Ia. 2023); United States v. Miller, No. 21-294-1, 2022 WL 16541136, at *2 (D.S.C. Oct. 28, 2022); United States v. Jackson, 544 F. Supp. 3d 817 (M.D. Tenn. 2021); United States v. Glenn, 204 F. Supp. 3d

893, 900 (M.D. La. 2016).  Short of deciding at this early stage of the case whether, as Barrington Defendants imply, § 31-3-18(b) prohibits all license plate covers as "foreign materials," the Court finds that Lipscomb has "state[d] a claim to relief that is plausible on its face."  Iqbal, 556 U.S. at 663.  That is, the allegations in the Complaint allow the Court to draw a reasonable inference that, because Lipscomb's registration plate was "clearly visible" and — despite the transparent cover — "in a condition to be clearly legible," DaCosta lacked reasonable suspicion to pull Lipscomb over for a violation of § 31-3-18(b).

Although Lipscomb states a claim with respect to the underlying stop, he fails to establish that the towing of the vehicle violated his constitutional rights.  Lipscomb does not dispute that his vehicle was unregistered at the time of the stop.  See Pl.'s Obj. Defs.' Mot. Dismiss ("Pl.'s Obj.") 18, ECF No. 30.  Therefore, because operating an unregistered vehicle is a misdemeanor under Rhode Island law, DaCosta could order a tow of the vehicle without infringing on Lipscomb's Fourth Amendment rights.  See R.I. Gen. Laws § 31-8-2.

Accordingly, Lipscomb may proceed with his claim against DaCosta only as it relates to the initiation of the stop for the license plate cover.  The Court notes that DaCosta may again raise the issue of whether he had reasonable suspicion to justify the stop once the parties engage in discovery.

### b. Barrington Police Department

Lipscomb also asserts that the Barrington Police Department ("BPD") is liable under § 1983 based on DaCosta's traffic stop. See Compl. 26-27. In support, he alleges that BPD has a history of targeting African Americans because "there were other known accounts of racial biases from the same department within weeks of the [P]laintiff's encounter where an employee was harassed as they were entering the workplace." Id.

Municipalities and their departments are "not vicariously liable under section 1983 for the actions of their non-policymaking employees." Haley v. City of Boston, 657 F.3d 39, 51 (1st Cir. 2011) (citing Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 403-04 (1997); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). Because municipalities are only liable for their own unconstitutional acts, a plaintiff must demonstrate that the municipality's "policy or custom is responsible for causing the constitutional violation or injury." Kelley v. LaForce, 288 F.3d 1, 9 (1st Cir. 2002) (citing Monell, 436 U.S. at 690-91). Said differently, such claims require a showing that a municipal employee "act[ed] pursuant to an official policy or custom of the municipality when they inflicted the alleged injury." Raymond v. City of Worcester, 142 F. Supp. 2d 145, 148 (D. Mass. 2001) (citing Monell, 436 U.S. at 690-94) (interpreting state analogue to 42 U.S.C. § 1983).

12

Lipscomb does not allege any unlawful customs or practices by BPD in initiating traffic stops. He instead relies on a vague allegation that BPD racially discriminated against an African American individual who entered the BPD office. See Compl. 26-27. That assertion, however, does not address any purported racial bias in BPD's policing practices. Consequently, Lipscomb offers no basis to infer that DaCosta relied on an official custom or practice when initiating the traffic stop based on Lipscomb's license plate cover. See Williams v. Bisceglia, 115 F. Supp. 3d 184, 188-89 (D. Mass. 2015) (dismissing § 1983 claim against municipality when complaint only contained "bare, conclusory allegations" concerning customs or policies).

Accordingly, Barrington Defendants' Motion to Dismiss is GRANTED as it relates to BPD.

### 2. Tiverton Defendants

#### a. Patrolman DaSilva

Lipscomb alleges that Patrolman DaSilva violated his Fourth Amendment rights by improperly initiating a traffic stop and then pressuring Lipscomb into accepting a ride to a nearby casino. See Compl. 16-18. Tiverton Defendants seek dismissal on the grounds that racial animus did not motivate the stop. Tiverton Mem. 3. They further contend that DaSilva had cause to stop and then tow the vehicle due to its suspended registration. Mun. Defs.' Reply 5.

13

Although Tiverton Defendants focus on the lack of allegations demonstrating racial animus, Lipscomb's claim hinges on whether proper reason existed to initiate the traffic stop. As discussed, a Fourth Amendment inquiry centers on the existence of reasonable suspicion at the time of the traffic stop, rather than the officer's personal motivations or animus. Chhien, 266 F.3d at 6; see Whren, 517 U.S. at 810. Here, Patrolman DaSilva stated that he pulled over Lipscomb because he slowed down when driving past DaSilva's police cruiser. Compl. 17.

A driver's slowing down at the sight of a police officer may be one of several factors that, in combination, give rise to a finding of reasonable suspicion in support of a traffic stop. See United States v. Arvizu, 534 U.S. 266, 275-76 (2002). But that does not mean police officers have reasonable suspicion to stop any driver who slows down or otherwise appears to be nervous in their presence. See United States v. McKoy, 402 F. Supp. 2d 311, 317 (D. Mass. 2004) (noting that "[n]ervousness is a natural reaction to police presence" and that "it alone is not sufficient" to support a finding of reasonable suspicion), aff'd, 428 F.3d 38 (1st Cir. 2005). Rather, such conduct may serve as a supporting factor in the totality-of-the-circumstances calculus that officers employ to assess reasonable suspicion.

The Court is unable to properly engage in the fact-specific inquiry for reasonable suspicion at this stage. The allegations

state that DaSilva initiated the traffic stop because Lipscomb
slowed down upon seeing DaSilva, which alone may not be enough to
justify the stop. See United States v. McKoy, 428 F.3d 38, 40
(1st Cir. 2005) (holding that nervousness during a traffic stop
did not permit a finding of reasonable suspicion necessary to
conduct a "frisk" of the defendant); see also United States v.
Hazratalie, No. 06-362, 2007 WL 128006, at *2 (W.D. Pa. Jan. 11,
2007) ("The act of slowing down after sighting a police car,
regardless of speed, is as much the act of an innocent person as
one who is engaging in criminal conduct."). In the absence of
other allegations supporting DaSilva's determination, the Court
cannot find that reasonable suspicion existed.[4]

The Court, nonetheless, holds that DaSilva's decision to tow
the vehicle and drive Lipscomb to the casino did not violate his
rights. DaSilva had sufficient cause to tow the vehicle because
he determined that the registration was suspended - a misdemeanor
under Rhode Island law. See R.I. Gen. Laws § 31-8-2. Moreover,
DaSilva's driving of Lipscomb in accordance with department policy
did not violate his Fourth Amendment rights because he voluntarily

---

[4] Tiverton Defendants contend that probable cause existed
because Lipscomb's vehicle was not registered. Mun. Defs.' Mem.
Resp. Pl.'s Obj. 5, ECF No. 31. The Complaint, nonetheless,
states that Patrolman DaSilva only learned of the registration
issue after he initiated the stop and collected Lipscomb's
documentation. Compl. 17, ECF No. 1. Therefore, the suspended
registration has no bearing on whether the initial stop constituted
an unlawful seizure.

chose to accept the ride to the casino. See Compl. 18. And even if Lipscomb had not consented to the ride, DaSilva possessed the authority to detain and remove Lipscomb from the side of the highway to ensure Lipscomb's and passing motorists' safety. See United States v. Rodriguez-Morales, 929 F.2d 780, 785 (1st Cir. 1991) (noting that police officers may exercise the community caretaking function to "interact with car and driver to promote public safety"); Horvath v. Hall, No. 07-CV-00113, 2008 WL 2563149, at *5 (E.D. Ark. June 24, 2008) (holding that officer could detain the plaintiff who was on the side of the road to remove the hazard that he presented to himself, officers, and passing motorists).

Accordingly, Lipscomb may proceed with his claim against DaSilva only as it relates to the initiation of the traffic stop. Like DaCosta, DaSilva may raise the reasonable suspicion argument after the parties engage in discovery.

### b. Tiverton Police Department

Lipscomb asserts a § 1983 claim against TPD because it dismissed Lipscomb's complaint against Patrolman DaSilva. Compl. 27. Specifically, Lipscomb reported that DaSilva violated protocol by driving significantly above the speed limit and for pulling over Lipscomb after "observing" him. Id.

As with his claim against BPD, Lipscomb fails to identify a custom or practice that caused his injuries. Lipscomb takes issue with TPD's ruling that DaSilva did not violate protocol. Id.

16

Regardless of its veracity, TPD's ruling did not contribute to the purportedly improper traffic stop because it occurred after the stop.  See City of Canton v. Harris, 489 U.S. 378, 385 (1989) (noting that a municipality is only liable when its policy or custom causes the injury).  Furthermore, Lipscomb does not allege that TPD has a history of improperly investigating its police officers, which could have facilitated DaSilva's conduct.  See Baez v. Town of Brookline, 44 F.4th 79, 83 (1st Cir. 2022) (recognizing that a plaintiff may assert a claim "if a municipality receives 'repeated complaints of civil rights violations . . . followed by no meaningful attempt on the part of the municipality to investigate or forestall further incidents'" (quoting Vann v. City of New York, 72 F.3d 1040, 1049 (2d Cir. 1995))).

Accordingly, Tiverton Defendants' Motion to Dismiss is GRANTED as it relates to TPD.

### 3. South Kingstown Defendants

Lipscomb contends that South Kingstown Defendants are liable under § 1983 for Patrolman Sugrue's traffic stop.  See Compl. 20-21.  South Kingstown Defendants respond that Sugrue had probable cause to pull over Lipscomb because he was driving on a suspended license.  South Kingstown Mem. 3-4; Mun. Defs.' Reply 5-6.  Lipscomb does not dispute that his license was suspended at the time of the stop.  See generally Pl.'s Obj.

Lipscomb's Complaint establishes that Sugrue had reasonable suspicion for initiating the traffic stop. Sugrue pulled Lipscomb over because he determined that Lipscomb's license was suspended in violation of Rhode Island law. See R.I. Gen. Laws § 31-11-18; see also Whren, 517 U.S. at 810 ("As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."). Lipscomb expressly alleged that Sugrue knew Lipscomb's name and that the license was suspended when he approached the vehicle, demonstrating that he had looked up the status of the license before pulling Lipscomb over. See Compl. 21; see also United States v. Pierre, 484 F.3d 75, 84 (1st Cir. 2007) (holding that officer had reasonable suspicion to initiate stop based on suspended license). Thus, regardless of Sugrue's motivations or other statements, the traffic stop did not violate Lipscomb's Fourth Amendment rights. See United States v. Miles, 18 F.4th 76, 80 (1st Cir. 2021) (holding that pretextual reasons are not relevant when the officer had a reasonable basis to find that the party committed a traffic violation).

Accordingly, the Court GRANTS South Kingstown Defendants' Motion to Dismiss.[5]

---

[5] As discussed, Lipscomb fails to state a claim based on the traffic stop by Patrolman Sugrue. Therefore, the Court need not address whether BPD is separately liable under 42 U.S.C. § 1983. See Est. of Bennett v. Wainwright, 548 F.3d 155, 177 (1st Cir.

**B. Lipscomb's Motion to Amend[6]**

After the parties briefed the motions to dismiss, Lipscomb moved for leave to amend his Complaint.  See generally Mot. Amend. Lipscomb does not propose new factual allegations, rather he seeks to add counts asserting violations of (1) 18 U.S.C. § 241 and § 242; (2) the Equal Protection Clause of the Fourteenth Amendment; (3) the Rhode Island Racial Profiling Act of 2004, R.I. Gen. Laws § 31-21.2-3; and (4) the Rhode Island Ethnic Intimidation Statute, R.I. Gen. Laws § 9-1-35.  Pl.'s Am. Pleadings Civ. Compl. ("Am. Pleadings") 3, ECF No. 36-1.  Municipal Defendants and State Defendants oppose the Motion to Amend on the grounds that Lipscomb's Amended Pleadings are futile.  Mun. Defs.' Mem. L. Supp. Obj. Pl.'s Mot. Am. Compl. ("Mun. Defs.' Obj.") 5-11, ECF No. 37-

---

2008) (noting that municipalities are liable only if their "employees commit unconstitutional acts and those actions are shown to be caused by a 'policy or custom'" (emphasis added)); see also Wilmot v. Tracey, 938 F. Supp. 2d 116, 150 (D. Mass. 2013) (dismissing § 1983 claims against municipality in absence of constitutional violation by municipal employee).

[6] In assessing the Motion to Amend, ECF No. 36, the Court considers the allegations in both the Complaint and the Amended Pleadings.  The Amended Pleadings only address Lipscomb's newly asserted claims.  See generally Am. Pleadings.  Due to Lipscomb's pro se status, the Court will not require him to file an amended complaint that combines the initial Complaint and Amended Pleadings.

1; State Defs.' Resp. 5-10; Mun. Defs.' Mem. Supp. Obj. Pl.'s Mot. Am. Compl. & Mot. Dismiss 5-11, ECF No. 39-1.[7]

The Court affords leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2); see Calderón-Serra v. Wilmington Trust Co., 715 F.3d 14, 19 (1st Cir. 2013). Leave, nonetheless, is not appropriate when the proposed amendment "would serve no useful purpose." Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 58 (1st Cir. 2006). In particular, the Court will not permit leave if the amendment is futile, "mean[ing] that the complaint, as amended, would fail to state a claim upon which relief could be granted." Lath v. City of Manchester, No. 16-CV-534, 2018 WL 1718291, at *1 (D.N.H. Apr. 9, 2018) (quoting Glassman v. Computervision Corp., 90 F.3d 24, 30 (1st Cir. 1996)). The standard mirrors a Rule 12(b)(6) inquiry, in which the amended pleadings must allege "sufficient factual material to state a facially plausible claim." Vargas-Colón v. Fundación Damas, Inc., 864 F.3d 14, 23 (1st Cir. 2017) (citing O'Shea ex rel. O'Shea v. UPS Ret. Plan, 837 F.3d 67, 77 (1st Cir. 2016)); see Licht v. Merck & Co., Inc., No. 22-CV-10515, 2023 WL 1111275, at *4 (D. Mass. Jan. 30, 2023) (denying motion to amend because no proposed amendment could cure

---

[7] Municipal Defendants filed an Objection to Plaintiff's Motion to Amend and Motion to Dismiss in Lieu of Answer, ECF No. 39. Despite its title, the Court interprets that filing as an opposition to the Motion to Amend. To the extent that document serves as a motion to dismiss the Amended Pleadings, it is denied as moot because the Court does not afford Lipscomb leave to amend.

deficiencies of original complaint, where the claims at issue were preempted by federal law).

For the reasons set forth herein, the Court denies the Motion to Amend.

### 1. Claims for Conspiracy Against Rights Pursuant to 18 U.S.C. § 241 and Deprivation of Rights under Color of Law Pursuant to 18 U.S.C. § 242

Lipscomb alleges that Defendants conspired to violate his civil rights under 18 U.S.C. §§ 241-242. See Am. Pleadings 12-13. Defendants contend that Lipscomb does not state a claim because 18 U.S.C. §§ 241-242 are criminal statutes that do not create a private cause of action. Mun. Defs.' Obj. 6-7; State Defs.' Resp. 5-6.

Defendants are correct. Because 18 U.S.C. §§ 241-242 are criminal statutes, Lipscomb lacks standing as a private citizen to bring a complaint under those sections. See Cok v. Consentino, 876 F.2d 1, 2 (1st Cir. 1989) ("Only the United States as prosecutor can bring a complaint under 18 U.S.C. §§ 241-242."). Moreover, Lipscomb may not seek relief under those statutes, as they do not convey a right to a civil action for damages. See id.; see, e.g., Smith v. Estrella, No. CA 09-426, 2009 WL 4927143, at *6 (D.R.I. Dec. 18, 2009) (recommending dismissal of private citizen's claim under 18 U.S.C. § 241); Overton v. Torruella, 183 F. Supp. 2d 295, 303-04 (D. Mass. 2001) (dismissing private

21

citizen's 18 U.S.C. § 242 claim because it "affords no private right of action for damages").

Accordingly, Lipscomb may not amend his Complaint to assert causes of action under 18 U.S.C. §§ 241-242.

### 2. Fourteenth Amendment Equal Protection Claims

Lipscomb claims that Defendants selectively enforced traffic laws based on his race. See Am. Pleadings 6-16. In support, he relies on a 2005 report on biases in police practices from the Rhode Island Affiliate of the American Civil Liberties Union. Id. at 8, 13; see R.I. Affiliate, ACLU, The Persistence of Racial Profiling in Rhode Island: A Nine Month Review 1-4 (2005), ECF No. 32-1. He further alleges that each officer only initiated the traffic stops after observing his face. Am. Pleadings 5.

Selective enforcement of traffic laws based on race violates the Equal Protection Clause of the Fourteenth Amendment. Flowers v. Fiore, 359 F.3d 24, 34 (1st Cir. 2004). To state such a claim, a plaintiff must demonstrate that "(1) the plaintiff, 'compared with others similarly situated, . . . was selectively treated'; and (2) such selective treatment was 'based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious bad faith to injure a person.'" McCoy v. Town of Pittsfield, 59 F.4th 497, 508 (1st Cir. 2023) (quoting Barrington Cove Ltd. v. R.I. Hous. & Mortg. Fin. Corp., 246 F.3d 1, 7 (1st Cir. 2001)). In other words,

22

a plaintiff must establish that he "was treated differently from similarly situated non-African-American motorists and that the action taken against him was motivated, at least in part, by his race." Flowers, 359 F.3d at 35. Unlike with Fourth Amendment claims for unlawful arrests, the existence of probable cause does not necessarily defeat selective enforcement claims. Holland v. City of Portland, 102 F.3d 6, 11 (1st Cir. 1996).

Here, Lipscomb does not assert facts or rely on evidence illustrating that similarly situated motorists receive or would have received different treatment. He does not allege that any of the officers or police departments have a history of not pulling over non-African Americans in analogous circumstances. See Flowers, 359 F.3d at 35 (dismissing claim because the plaintiff "presented no evidence that the officers treated him any differently from similarly situated non-African-American motorists"); Gillespie v. Pa. State Pol., 574 F. Supp. 3d 272, 287 (E.D. Pa. 2021) (holding that a plaintiff must present more than a mere allegation that non-minority motorists are not subject to such practices). Moreover, the 2005 report on which he relies – The Persistence of Racial Profiling in Rhode Island: A Nine Month Review – is irrelevant. That report discusses police practices from nearly two decades ago, and more importantly, only addresses the racial biases in searches incident to traffic stops, rather than the stops themselves. See Clark v. Boscher, 514 F.3d 107,

114 (1st Cir. 2008) (finding the lower court appropriately dismissed claim when the plaintiff alleged comparators that were not similarly situated).

Lipscomb also fails to establish that any Defendant initiated a traffic stop on account of his race. Neither Lipscomb's Complaint nor his Amended Pleadings demonstrate that any Defendant made racial remarks during the traffic stops or treated Lipscomb in an aggressive or confrontational manner.[8] See Jeannite v. City of Haverhill, No. 04-10541, 2006 WL 1806410, at *4 (D. Mass. June 30, 2006) (dismissing selective enforcement claim because plaintiff did not provide evidence of discriminatory treatment in traffic stops); see also Ford v. Wilson, 90 F.3d 245, 248 (7th Cir. 1996) (dismissing claim when officer did nothing "indicating a racial motive"). Ultimately, Lipscomb solely relies on his personal opinion that the officers initiated the traffic stops after observing his face, which is insufficient to support a selective enforcement claim. See Johnson v. Crooks, 326 F.3d 995, 1000 (8th Cir. 2003) (dismissing claim when the plaintiff only

---

[8] Lipscomb alleges that State Defendants questioned him for over a half hour after pulling him over for tinted windows. See Compl. 13-14. Although those allegations suggest that the officers acted in a confrontational manner, Lipscomb does not allege facts to support that non-African American motorists receive different treatment in similar circumstances. See Flowers v. Fiore, 359 F.3d 24, 35 (1st Cir. 2004) (noting that a party must present evidence "that he was treated differently from similarly situated non-African-American motorists").

produced evidence that officer was in a position to see her face and that he closely followed her before pulling her over).

Accordingly, Lipscomb may not amend his Complaint to assert Equal Protection claims.

### 3. Claims under Rhode Island Racial Profiling Act and Rhode Island Ethnic Intimidation Statute

Lastly, Lipscomb seeks leave to add state-law claims under the Rhode Island Racial Profiling Act ("RIRPA"), R.I. Gen. Laws § 31-21.2-3, and Ethnic Intimidation Statute ("RIEIA"), R.I. Gen. Laws § 9-1-35. See Am. Pleadings 3-6. RIPRA creates a civil remedy for individuals who are subject to disparate treatment by law enforcement officials on account of their race. R.I. Gen. Laws § 31-21.2-3; see Lopera v. Town of Coventry, 652 F. Supp. 2d 203, 218 (D.R.I. 2009). Likewise, RIEIA creates a cause of action for individuals who have been "maliciously subjected to an act or acts which would reasonably be construed as intended to harass or intimidate the person because of his or her race, religion, or national origin." R.I. Gen. Laws § 9-1-35.

Lipscomb's state-law claims fail for the same reasons as his Equal Protection claims. RIPRA and RIEIA each require a showing of discriminatory animus. Lopera v. Town of Coventry, 640 F.3d 388, 403-04 (1st Cir. 2011). Consequently, Lipscomb may not maintain such claims because, as previously discussed, his

allegations do not demonstrate that the officers initiated the traffic stops on account of his race.

### IV. CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Barrington Defendants' Motion to Dismiss, ECF No. 12, GRANTS IN PART and DENIES IN PART Tiverton Defendants' Motion to Dismiss, ECF No. 13, and GRANTS South Kingstown Defendants' Motion to Dismiss, ECF No. 20. Additionally, the Court DENIES Lipscomb's Motion to Amend, ECF No. 36, DENIES Lipscomb's Motion for Summary Judgment, ECF No. 48, without prejudice, and DENIES AS MOOT both Municipal Defendants' Motion to Dismiss, ECF No. 39, and All Defendants' Motion to Stay, ECF No. 49.


IT IS SO ORDERED.

William E. Smith
Senior District Judge
Date: February 4, 2025