UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ANTHONY LIPSCOMB,<br><br>Plaintiffs,<br><br>v.<br><br>STATE OF RHODE ISLAND; RHODE ISLAND STATE POLICE DEPARTMENT; RHODE ISLAND STATE TROOPER PARDINGTON; RHODE ISLAND STATE TROOPER WINTON; RHODE ISLAND STATE TROOPER COLASANTE; PATROLMAN DACOSTA, BARRINGTON POLICE DEPARTMENT; PATROLMAN DASILVA, TIVERTON POLICE DEPARTMENT; PATROLMAN JEFFREY SHAGRILL, SOUTH KINGSTOWN POLICE DEPARTMENT,<br><br>Defendants. | C.A. No. 22-cv-319-MRD-AEM |

**MEMORANDUM AND ORDER**

MELISSA R. DUBOSE, United States District Judge.

Plaintiff Anthony Lipscomb believes that he was subjected to unlawful racial profiling when he was pulled over in Providence, Pawtucket, Barrington, and Tiverton in four separate stops in 2020, 2021, and 2022. The claims pending before this Court and addressed in the Defendants' motions for summary judgment

challenge these traffic stops as Fourth Amendment violations. ECF Nos. 78, 87. For the reasons explained below, the motions for summary judgment are GRANTED.

## I. BACKGROUND[1]

In February 2020, Defendant (then State Trooper) Pardington stopped Lipscomb in Providence because he believed that the vehicle Lipscomb was operating was unregistered. ECF No. 88 at 2 ¶¶ 2, 4. Two months later, after Lipscomb filed a complaint with the Rhode Island State Police, the agency dismissed the resulting ticket. ECF No. 88-2 at 21:1–22:8. In March 2021, a different state trooper initiated a traffic stop of Lipscomb on I-95 North in the area of Pawtucket. ECF No. 88-2 at 22:9–23:9. While pulled over, the Trooper mentioned the window tint on Lipscomb's vehicle's windows. ECF No. 88-2 at 33:8–24. Lipscomb identified this State Trooper as "Michael Winton" in his Complaint.[2] ECF No. 1 at 7, 13–14. During this same stop, Defendant State Trooper Colasante arrived on scene to assist after Lipscomb refused a request to get out of his car. ECF No. 88 at 3 ¶ 9. Lipscomb recalls that Colasante assumed the role of "the calm [officer]" who reassured Lipscomb that the traffic stop would be over soon. ECF No. 88 at 3 ¶ 10; ECF No. 88-2 at 32:7–15, 34:10–16, 39:2–40:6.

---

[1] The factual summary in this section is drawn from the Defendants' statements of undisputed facts and the exhibits attached thereto. ECF No. 78-2, 88. The summary of events pertaining to police officers DaCosta's and DaSilva's traffic stops incorporates information from Lipscomb's objection to these defendants' statement of undisputed facts. ECF No. 82.

[2] The Rhode Island Attorney General's office returned the summons for Michael Winton unexecuted because no one by that name worked for the Rhode Island State Police. ECF No. 17 at 2.

The following year, in March 2022, Barrington police officer DaCosta pulled Lipscomb over in a daytime stop after observing from his stationary position that Lipscomb's vehicle – a Toyota Camry – had an impermissible tinted license plate cover. ECF No. 78-2 at 1–2 ¶¶ 1–5. According to Lipscomb, prior to executing the stop, Officer DaCosta made eye contact with him as he drove past. ECF No. 82 at 3. DaCosta pulled Lipscomb over, ran the plate, discovered that the plate was not for the subject Camry, and towed the car. ECF No. 78-2 at 2 ¶¶ 6–9.

The fourth stop in this case occurred late one night in May 2022. Tiverton police officer DaSilva ran Lipscomb's plate as he passed Lipscomb driving a Toyota Camry on Route 24 and discovered that the registration for the vehicle was suspended. ECF No. 78-2 at 3 ¶¶ 11–16. DaSilva pulled Lipscomb over. ECF No. 78-2 at 3 ¶ 18. DaSilva advised Lipscomb as to why he had been pulled over and Lipscomb responded by producing a registration renewal dated March 2022. ECF No. 78-2 at 3–4 ¶¶ 20-21. DaSilva explained that the document did not mean that the vehicle was in good standing at the time of the stop and issued a citation for operating a vehicle with a canceled registration. ECF No. 78-2 at 4 ¶¶ 22, 24. Lipscomb's deposition testimony confirms this sequence of events and adds that DaSilva looked at Lipscomb as he drove past. ECF No. 78-2 at 17:10-19:10. Lipscomb now asserts that DaSilva was driving too fast past Lipscomb to be able to check the status of the plate and the vehicle's registration. ECF No. 82 at 7.

Lipscomb filed this case in August 2022, asserting claims against the Defendants under 42 U.S.C. § 1983 for violating his Fourth Amendment rights. The

Court granted in part motions to dismiss for failure to state a claim that had been filed by some (but not all) of the Defendants.[3] ECF No. 51 at 8-18. The Court denied Lipscomb's motion to amend his complaint to include claims for violation of his rights under the Fourteenth Amendment's Equal Protection Clause, the Rhode Island Racial Profiling Act, and the Rhode Island Ethnic Intimidation Statute because the proposed amended complaint had not plausibly pled any of these claims. ECF No. 51 at 22-26.

Lipscomb's Fourth Amendment claims proceeded through the discovery phase of this litigation. Now before the Court and ripe for adjudication are two motions for summary judgment.

## II. LEGAL STANDARD

"[S]ummary judgment is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Finamore v. Miglionico*, 15 F.4th 52, 58 (1st Cir. 2021) (quoting *Arabian Support & Servs. Co. v. Textron Sys. Corp.*, 943 F.3d 42, 47 (1st Cir. 2019)). "[A] genuine issue exists if 'a reasonable jury could resolve the point in favor of the nonmoving party.'" *Id.* (quoting *McCarthy v. Nw. Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995)). "[A] fact is material only if 'it possesses the capacity, if determined as the nonmovant wishes, to alter the outcome of the lawsuit under the applicable legal tenets.'" *Id.* (quoting *Roche v. John Hancock Mut. Life Ins. Co.*, 81 F.3d 249, 253 (1st Cir. 1996)).

---

[3] The Court dismissed all claims against the following Defendants: Barrington Police Department (ECF No. 51 at 12-13), Tiverton Police Department (*id.* at 16-17), South Kingstown Police Department and its Patrolman Sugrue (*id.* at 17-18).

The Court must view "the record in the light most flattering to the nonmovant (here, [Lipscomb]) and draw all reasonable inferences" in his favor. *Id.* "But this plaintiff-friendly approach has well-defined limits: one such limitation dictates that 'motions for summary judgment must be decided on the record as it stands, not on litigants' visions of what the facts might some day reveal.'" *Id.* (quoting *Maldonado-Denis v. Castillo-Rodriguez*, 23 F.3d 576, 581 (1st Cir. 1994)).

## III. DISCUSSION

In an action brought under 42 U.S.C. § 1983, "[t]he two essential elements . . . are (i) that the conduct complained of has been committed under color of state law, and (ii) that this conduct worked a denial of rights secured by the Constitution or laws of the United States." *Id.* (quoting *Chongris v. Bd. of Appeals of Andover*, 811 F.2d 36, 40 (1st Cir. 1987)). Lipscomb's § 1983 claim is premised on alleged Fourth Amendment violations, so he needs to demonstrate that each respective police officer who initiated the traffic stops of which he complains did not have "reasonable suspicion" that Lipscomb committed "a traffic violation" before pulling him over. *See Kenney v. Floyd*, 700 F.3d 604, 608 (1st Cir. 2012).

### A. <u>State Defendants</u>[4]

The State Defendants assert that the 2020 and 2021 traffic stops are each indisputably supported by reasonable suspicion because the state troopers who initiated the stops had and articulated legitimate reasons for the stops. ECF No. 87-

[4] The State Defendants include State Trooper Pardington, State Trooper Colasante, the State of Rhode Island, and the Rhode Island State Police Department.

1 at 8-9. Starting with the stop in Providence initiated by Pardington, the record supports that Pardington stopped Lipscomb because Lipscomb's vehicle had a canceled registration in violation of Rhode Island General Laws § 31-8-2. ECF No. 87-1 at 8. Lipscomb's deposition testimony indicates that, at the time of the stop, he knew that Pardington had pulled him over because of the canceled registration. ECF No. 88-2 at 21:1-2. Lipscomb has not filed a response in opposition to the State Defendants' motion for summary judgment and therefore has provided neither argument nor evidence to dispute Pardington's stated reason for initiating the stop. Lipscomb had the burden to show the constitutional violation but "neither argued nor provided evidence that [his] vehicle registration was current at the time of the stop." *Kenney*, 700 F.3d at 608.

With respect to Defendant Colasante, the State Defendants argue that there is no evidence that Trooper Colasante had any part of the decision to pull Lipscomb over in 2021 but simply interacted with Lipscomb in a respectful way after Lipscomb pulled his vehicle to the side of the highway. ECF No. 87-1 at 9. Lipscomb's deposition testimony in no way contradicts this argument and, again, he has not submitted any evidence to demonstrate Colasante's actions at the stop infringed Lipscomb's rights in any way. Because there is no dispute that Colasante was not the state trooper who initiated the traffic stop, this defendant cannot have infringed Lipscomb's Fourth Amendment right by pulling him over. As for the State of Rhode Island and the Rhode Island State Police, Lipscomb alleges in his complaint that both

were "complicit" in the unconstitutional traffic stops, ECF No. 1 at 26 ¶ 2, but provides no evidence or argument in support of that allegation.

"To defeat a properly supported motion for summary judgment, the nonmoving party must establish a trial-worthy issue by presenting enough competent evidence to enable a finding favorable to the nonmoving party." *ATC Realty, LLC v. Town of Kingston, N.H.*, 303 F.3d 91, 94 (1st Cir. 2002) (quoting *LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 842 (1st Cir. 1993)). The Court notes that, at his deposition, Lipscomb indicated that he possessed recorded video of the traffic stops on his cell phone but that he had not provided these videos to any of the attorneys involved in the case and he had not downloaded the videos to any other device. ECF No. 88-2 at 40:7-42:24. The First Circuit is clear that "motions for summary judgment must be decided on the record as it stands, not on litigants' visions of what the facts might some day reveal." *Finamore*, 15 F.4th at 58 (quoting *Maldonado-Denis*, 23 F.3d at 581). To indicate there is a triable issue of fact against the State Defendants, the moment to produce any evidence Lipscomb has with respect to the 2020 and 2021 traffic stops was in opposing the State Defendants' motion for summary judgment.

The Court concludes that there is no genuine factual dispute that both traffic stops initiated by State Troopers were properly supported by reasonable suspicion that Lipscomb had violated a state traffic law. The State Defendants are entitled to judgment in their favor as a matter of law.

It is worth noting that, to the extent Lipscomb seeks monetary damages from the State Defendants in their official capacities, this remedy is barred. This action is

brought pursuant to § 1983 and none of these defendants qualify as *persons*. *See Fantini v. Salem State Coll.*, 557 F.3d 22, 33 (1st Cir. 2009) ("It is well settled 'that neither a state agency nor a state official acting in his official capacity may be sued for damages in a section 1983 action.'" (quoting *Johnson v. Rodriguez,* 943 F.2d 104, 108 (1st Cir. 1991))).

**B. Municipal Defendants**[5]

1. Patrolman DaCosta

Defendant DaCosta contends that he is entitled to judgment as a matter of law on Lipscomb's claim against him because there is no dispute that Lipscomb's vehicle's license plate had a tinted cover on it and that the particular cover violated Rhode Island General Laws § 31-3-18. ECF No. 78-1 at 9-11. Lipscomb admitted as much at his deposition. ECF No. 78-2 at 14:23-15:3.

Lipscomb did file an opposition to this motion for summary judgment, arguing that DaCosta initiated the stop after seeing Lipscomb's face and making eye contact. ECF No. 81 at 9. He contends that DaCosta's cruiser position would not have allowed him to see the license plate before he pulled out to drive behind Lipscomb's car and that the license plate itself was clearly visible because the cover was transparent. *Id.* at 10. Because DaCosta only learned after pulling Lipscomb over that the vehicle was not registered, Lipscomb says that the tinted plate cover amounts to the kind of "naked hunch" that doesn't qualify for meeting the minimum threshold for reasonable

[5] The Municipal Defendants include Patrolman DaCosta of the Barrington Police Department and Patrolman DaSilva of the Tiverton Police Department.

suspicion.[6] *Id.* What was really going on, according to Lipscomb, was "[s]elective enforcement of motor vehicle laws based on race [which] violates the [F]ourteenth [A]mendment" but he needs more evidence to show DaCosta's discriminatory purpose and effect. This, he argues, should preclude summary judgment. *Id.* at 10–11.

In reply, the Municipal Defendants point out that the only pending claim against them is under the Fourth Amendment. ECF No. 84 at 1 & n.1 (citing ECF No. 51 at 22–26). Indeed, the Court denied Lipscomb's motion to amend his complaint to include claims under the Fourteenth Amendment and Rhode Island's Racial Profiling Prevention Act. *Id.* While Lipscomb states in his summary judgment opposition papers that the plate cover was transparent, he admitted during his deposition that the covering was tinted, ECF No. 81-3 at 5:2–3, and has produced no evidence to either contradict or retract this statement. ECF No. 84 at 2. As the Court discussed above, summary judgment is the phase where litigants present the evidence that they have. It is not the phase to procure the evidence that they hope to find. *See Finamore*, 15 F.4th at 58. In fact, the First Circuit refers bluntly to this stage of litigation as the time to "put up or shut up." *Roberge v. Travelers Prop. Cas. Co. of Am.*, 190 F.4th 45, 53 (1st Cir. 2026) (quoting *United States ex rel. Omni Healthcare Inc. v. MD Spine Sols. LLC*, 160 F.4th 248, 265 (1st Cir. 2025)). As the Municipal Defendants argue in their Reply, ECF No. 84 at 2-3, there is no genuine

---

[6] The initial stop is what's most salient here. That DaCosta learned after initiating the stop that the car was not registered is irrelevant to the Court's consideration of whether DaCosta had reasonable suspicion at the time he initiated the traffic stop.

factual dispute that Patrolman DaCosta saw the covered, tinted plate, and knew the tinted plate violated Rhode Island General Laws § 31-3-18(b). As such, he had reasonable suspicion to initiate the stop and is entitled to judgment as a matter of law.

2. Patrolman DaSilva

Defendant DaSilva contends he is entitled to judgment as a matter of law on Lipscomb's claim against him because there is no dispute that he found out Lipscomb's vehicle's registration was suspended prior to initiating the stop, making it a violation of Rhode Island law to operate, before initiating the traffic stop. ECF No. 78-1 at 11. Lipscomb argues in his opposition that DaSilva initiated the stop after seeing Lipscomb's face and making eye contact as the cruiser sped past the Camry, and that it is beyond belief that DaSilva managed to investigate the vehicle's registration status in the time between passing Lipscomb's car and pulling him over. ECF No. 81 at 9, 12. Lipscomb also asserts that a material factual dispute exists about whether Lipscomb decreased his speed when the cruiser passed him because he was speeding or because the cruiser sped past him. *Id.* at 13. Lipscomb says he needs an answer to a discovery request to obtain DaSilva's driving record and that this outstanding discovery (and the factual dispute he identifies) should preclude summary judgment. *Id.* The Municipal Defendants counter that Lipscomb did not ask for these documents during the factual discovery phase. ECF No. 84 at 3 n.3, 5. The Municipal Defendants also argue that Lipscomb's version of events is mere speculation, which is not enough to controvert Officer DaSilva's documented

narrative as to the sequence of events resulting in the traffic stop. As such, there is no material fact that a fact finder must resolve. ECF No. 84 at 4.

Again, what Lipscomb hopes to uncover in the future is not going to save his claim. *See Finamore*, 15 F.4th at 58. The Court's role at summary judgment is to assess the record presented to it by the parties and determine whether, based on that record, there are any genuine issues of material fact to be resolved by a trier of fact and, if not, whether the moving party is entitled to judgment as a matter of law. While there are conflicting accounts in the record regarding the rate of speed of the police vehicle versus Lipscomb's speed, this is not a material fact because the resolution of the factual dispute will not "alter the outcome of the lawsuit under the applicable legal tenets." *Id.* Lipscomb has provided no evidence to indicate that there is a genuine factual dispute over whether Patrolman DaSilva knew prior to initiating the stop that Lipscomb's vehicle did not have proper registration status and that the lack of valid registration violated Rhode Island General Laws § 31-8-2. DaSilva is therefore also entitled to judgment as a matter of law.

## IV. CONCLUSION

For the reasons explained above, the Municipal Defendants' and State Defendants' motions for summary judgment, ECF No. 78 and ECF No. 87, are GRANTED. Lipscomb's Motion to Sever the Municipal Defendants from the State Defendants, ECF No. 83, is DENIED as moot. Final judgment shall enter in favor of all Defendants.

IT IS SO ORDERED.

Melissa R. DuBose
United States District Judge

November 5, 2026